MANISH KUMAR (CSBN 269493)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
manish.kumar@usdoj.gov
Telephone: (415) 934-5300

Attorney for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>         v.<br><br>DAVID MARGEN,<br><br>                    Defendant. | Case No. CR 4:11-00425 PJH<br><br>**UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. §5K1.1**<br><br>Date: November 29, 2017<br>Time: 2:30 p.m.<br>Court: Hon. Chief Judge Phyllis J. Hamilton |

The United States respectfully requests that this Court sentence defendant David Margen to (1) serve eight months of custody, based on the government's motion for a substantial-assistance downward departure of 35 percent from the low end of the applicable Guidelines range; (2) serve three years of supervised release; and (3) pay a criminal fine of $7,500, a $200 special assessment, and restitution in the amount of $63,114.  This sentence is consistent with the parties' Fed. R. Crim. P. 11(c)(1)(A) and (B) plea agreement.

//

//

//

# BACKGROUND

Defendant David Margen participated in the bid-rigging conspiracy at the Alameda County foreclosure auctions from approximately March 2009 until June 2010.[1] Defendant also briefly participated in the bid-rigging conspiracy in Contra Costa County in March 2009. Presentence Report (PSR) ¶ 7.

Defendant purchased residential property at Bay Area foreclosure auctions for investment purposes. Defendant first learned of bid-rigging payoffs at the foreclosure auctions as a client of Al Florida during the late 1980s. PSR ¶ 14. After he began attending the auctions on his own, defendant observed firsthand certain bidders' collusive bidding practices. *Id.* at ¶ 17. For a period of time, defendant and his investor partners were able to resist pressure from other bidders to engage in payoffs, even though this made it more expensive to acquire properties. *Id.* at ¶ 18. Sometime after defendant resumed attending the trustee sales on his own in 2008, he began participating in the bid-rigging conspiracy and purchased several properties. In total, defendant purchased approximately $6.1 million of real estate through the conspiracy and was owed $63,113 in payoffs for agreeing not to bid competitively, which he has agreed to pay as restitution. *Id.* at ¶¶ 23, 108.

Defendant entered an original guilty plea to two counts of mail fraud and two counts of bid rigging in August 2011. In October 2016, those pleas were withdrawn by stipulation, and the defendant entered a guilty plea to the bid-rigging counts only, pursuant to a revised plea agreement. Minute Entry, Doc. No. 38. The Court adopted the Report and Recommendation accepting defendant's guilty plea, but reserved ruling on whether it will accept the plea agreement pending receipt of the PSR. Order, Doc. No. 42.[2]

//
//
//
//

---

[1] The government concurs with the description of the conspiracy contained in the PSR.
[2] Because the plea agreement is consistent with the Guidelines calculation contained in the PSR, the government will make a motion for the Court to accept the plea agreement and to dismiss the mail fraud counts (Counts Two and Four of the Information) at the sentencing hearing.

# ARGUMENT

## A. Sentencing Guidelines Calculations

### 1. Criminal History

In paragraph 12 of the Plea Agreement, the parties agree that defendant's Criminal History Category is determined by the Court. The PSR calculates defendant's Criminal History Category as I, since he has no prior criminal history. The United States agrees. PSR ¶ 43.

### 2. Offense Level

The PSR calculates the total offense level as 13, consistent with the plea agreement. PSR ¶ 25. This calculation includes a one-level increase to the base offense level of 12 for conduct involving the submission of non-competitive bids, a two-level increase for a volume of commerce exceeding $1 million, and a downward reduction of two levels for acceptance of responsibility. U.S. Sentencing Guidelines Manual ("U.S.S.G.") §§2R1.1(b)(1) & (b)(2)(A), 3E1.1(a) & (b) (U.S. Sentencing Comm'n 2010).

Under the Guidelines, an offense level of 13 and Criminal History Category of I results in a sentence ranging from 12 to 18 months of imprisonment.

### 3. Fine and Restitution

The PSR calculates a fine range of $61,000 to $305,000 consistent with the plea agreement. PSR ¶ 106; U.S.S.G. §2R1.1(c)(1) (fine range shall be from one to five percent of the volume of commerce). In paragraph 9 of the plea agreement, the government agrees to recommend a fine between $7,500 and $75,000. For the reasons discussed below, the government recommends a $7,500 fine. The parties have agreed in paragraph 11 of the plea agreement that defendant shall pay restitution in the amount of $63,114.

## B. Basis for Downward Departure for Substantial Assistance

The government moves, pursuant to Section 5K1.1 of the Guidelines, for a downward departure for substantial assistance to the investigation. The government recommends a 35 percent reduction, resulting in a sentence of approximately eight months. This recommendation is based on a number of factors. First, a significant consideration is the timing of defendant's decision to plead guilty and cooperate. Defendant was one of the very individuals to agree to

plead guilty in 2011, nearly three years before any of his coconspirators were indicted by the grand jury, and at a time when there were few cooperators who could have implicated him in the conspiracy. Defendant's plea thus had an important effect on the dozens of coconspirators who subsequently pleaded guilty and cooperated in the investigation.

The government's recommendation is also based on the extent and value of the information provided by defendant. Defendant sat for four debrief interviews with the government between August and September 2011. During those interviews, defendant provided corroborating information regarding the operation of the conspiracy, authenticated various records of the rounds and payoffs, and provided an account of various targets' conduct in furtherance of the conspiracy. This information was particularly useful to the government because it was obtained early in the investigation. For these reasons, defendant was identified as a potential witness in the *United States v. Ramin Yeganeh* trial (No. CR 4:15-339 PJH), though his testimony did not end up being required after defendant Yeganeh pleaded guilty.

Based on the foregoing, a 35 percent reduction for substantial assistance is appropriate.

## C. Sentencing Recommendation

The government's recommendation of eight months is reasonable and not greater than necessary in light of the factors articulated in 18 U.S.S.C. § 3553. The most compelling factors weighing in favor of the recommendation are the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence to future bid-rigging offenses[3] and white-collar crime generally, as the government has argued in the related cases. Defendant profited from the rigged auctions in which he participated, both by receiving over $60,000 in payoffs and purchasing over $6 million worth of properties at discounted prices through suppressed bidding at the public auctions.

---

[3] With regard to general deterrence, the government notes that three real estate investors were recently indicted for rigging online real estate foreclosure auctions in the state of Florida between January 2012 and June 2015. Press Release, U.S. Department of Justice, Three Release Estate Investors Indicted for Bid Rigging in Florida Online Foreclosure Auctions (November 3, 2017), available at https://www.justice.gov/opa/pr/three-real-estate-investors-indicted-bid-rigging-florida-online-foreclosure-auctions.

However, an assessment of the history and characteristics of defendant should take into account certain mitigating factors previously identified by the Court for similarly situated individuals. These factors include defendant's early decision to accept responsibility and cooperate in the investigation, his willingness to pay restitution, and his status as a first-time offender. While the government is recommending custody here, as it has in all the related cases, these factors have led this Court to impose probationary sentences for other defendants.

The PSR and letters of support suggest that defendant's mental health and marriage have been negatively impacted by this case, and Probation recommends a downward variance based in part on these circumstances. While the personal consequences of this case have been rather considerable for defendant, they do not, in the government's view, rise to a level that would make such a recommendation necessary. Given the Court's practice of imposing probationary sentences for similarly situated offenders, there is less need for a further variance to account for defendant's personal circumstances. While the government has limited visibility into defendant's background, other cooperators have also faced difficult circumstances arising from the investigation and prosecution of these cases and began performing community service after being charged. Moreover, as the government has previously argued, the seriousness of bid-rigging offenses is generally understated by the Sentencing Guidelines. U.S.S.G. §2R1.1 cmt. background (volume of commerce can be an understated measure of seriousness in some bid-rigging cases).

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court sentence defendant David Margen to (1) serve eight months of custody; (2) serve three years of supervised release; and (3) pay a fine of $7,500, a $200 special assessment, and restitution in the amount of $63,114.

Dated: November 22, 2017                    Respectfully submitted,

                                            /s/ MANISH KUMAR
                                            United States Department of Justice
                                            Antitrust Division